## CHASE *v.* SPENCER.

1. JUDGMENTS—CONCLUSIVENESS—MENTAL INCAPACITY.

> Capacity to dispose of property and to execute proper convey-
> ances is not necessarily disproved by a determination of the
> probate court appointing a guardian for the grantor on the
> ground of mental infirmity, but it appearing that his con-
> dition, whatever it was, continued from boyhood to death,
> the probate order is proper to be considered as evidence of
> his condition.

2. CANCELLATION OF INSTRUMENTS—DEEDS—INCAPACITY OF GRANT-
OR—EVIDENCE.

> On a bill to set aside a deed on the ground of mental incapacity
> of the grantor and undue influence, evidence examined; and
> *held*, to show that he was capable of understanding and did
> understand that he owned the property in question and
> could dispose of it as he pleased, and that he chose, intelli-
> gently, to give it to defendants' mother, who was his sister.

Appeal from Livingston; Miner, J. Submitted Octo-
ber 14, 1907. (Docket No. 39.) Decided November 5,
1907.

Bill by Hester C. Chase against Emma Spencer, Ella
Corbin, Delia Alger, and others, to set aside certain deeds.
From a decree dismissing the bill, complainant and de-
fendants Corbin and Alger appeal.   Affirmed.

*Louis E. Howlett*, for complainant.

*Eugene A. Stowe*, for defendants Corbin and Alger.

*Shields & Shields*, for other defendants.

OSTRANDER, J.   Erastus Merrill, who died in Novem-
ber, 1864, testate, was father of Sarah (Salisbury), Helen
(Cornell), Alexander, and Loring. His widow was
mother of Helen and Loring.  Subject to a life estate de-
vised to his widow, the estate of Erastus was given to

Loring. Loring, who was 29 years old when his father died, also owned land purchased for him by his father and deeded directly to Loring. By two deeds, dated, respectively, June 19 and June 28, 1893, Loring, who had never married, conveyed the land to his sister Helen and died during the following month. Sarah, mother of complainant, died June 10, 1905. Helen died January 3, 1906. It is averred in the bill of complaint that Helen caused the two deeds made to her by Loring to be recorded in June, 1893, and claimed thereafter to be owner of the premises described in the deeds and continued to occupy and possess the same until she died. After her death, her children claimed and now claim to own the premises. It is sought in this suit to set aside the deeds made by Loring, and in that behalf it is charged that at the time of making them he was of unsound mind and mentally incompetent to make them, and that he was induced to make them by undue and improper influence exercised by his sister Helen "and others." It is set out in the bill that after the death of Erastus Merrill the mother applied to the probate court for the appointment of a guardian of the person and property of Loring and in that court an order was made appointing one Barnes Loring, a half brother, to have charge of his person and estate. Barnes Loring filed a bond, with Helen Cornell and her husband as sureties, and filed an inventory. It does not appear that letters of guardianship were issued. He was never discharged by order of the court.

The questions discussed by counsel are:

(1) The effect of the guardianship.
(2) The fact of guardianship and other facts in evidence as establishing incompetency of Loring, in fact.
(3) The relations of Helen Cornell and her brother Loring.
(4) The effect of the delay in bringing suit.

1. In *Rice* v. *Rice*, 50 Mich. 448, the circuit judge charged the jury that the determination of the probate court was prima facie evidence of the testator's insanity

and incapacity to make a will, shifting the burden of proof upon that point to proponents. It was held by this court that if the question of testamentary capacity had been involved in the application for appointment of a guardian, the circuit judge would have been correct in his ruling, but that testator's sanity was not, in fact, put in issue. See, also, *Rice* v. *Rice*, 53 Mich. 432. In the case at bar, the petition of the mother contained the allegation that "said Loring Merrill is about 29 years old and has become incompetent by reason of mental imbecility to have the charge and management of his estate and property," and the order of the court recites the finding that Loring "is by reason of mental infirmity incompetent to have the charge and management of his estate."

Upon the reasoning of the cases cited, it must be said that capacity to dispose of property and to execute proper conveyances is not necessarily disproved by the determination of the probate court, although the order, it otherwise appearing that the condition of Loring, whatever it was, was continuing from boyhood to death, was, whether or not the proceedings were in all respects regular, proper to be considered as evidence of his condition.

2, 3. The action of the father in preferring his son Loring to the exclusion of his other children is unexplained except by the inference that he was an object of special solicitude. Loring was physically capable of earning a living, and reason for special solicitude in his behalf may be found in the fact set out in the petition of the mother filed in the probate court. Helen Cornell and her husband, in becoming sureties for the guardian, approved the action of the mother and of the court. Immediately after the appointment of the guardian, Helen and her husband moved upon the premises and in her family her brother Loring lived for some 28 years and until he died. The guardian soon left the State and has since remained away. There is no testimony tending to prove an accounting with the guardian, or with Helen, that any accounts were kept by any one of the profits of the farm,

of the receipts or expenditures of money, or that Loring was ever consulted about his or her affairs or gave any directions or conducted any affairs of consequence. Apparently, his sister and her husband managed the farm and lived upon the proceeds derived therefrom, furnishing a home for Loring, to the knowledge and with the consent of other relatives. There is no expert evidence of the mental condition of Loring. Aside from the proceedings in probate court, there is testimony to support each of two theories. One, that he was imbecile, foolish; the other, that, being afflicted with an impediment of speech, he was shy, precluded from engaging, except with great difficulty, in conversation, and therefore cut off from social affairs and from engaging in business; that he was in fact observing, intelligent, apparently able to read, a good farmer, skillful with cattle, a voter at elections. In examining the record, an attempt has been made to distinguish conduct which may have been the result of suggestion or command and such as indicates volition and ability to reason. The result is not very satisfactory, yet it is a strong impression that Loring was not a fool. His intelligence, as indicated by his activities, was limited, but his actions for the most part were rational. Giving due effect to the evidence, including that furnished by the conduct of his parents, we are impressed that he was capable of understanding and did understand that he owned the property in question and could dispose of it as he pleased; that he chose, intelligently, to give it to his sister. In this conclusion, we are in agreement with the learned trial judge, who had the opportunity of seeing the witnesses and hearing the testimony.

From 1893 until February, 1906, when the bill of complaint was filed, no attempt was made to question the validity of the deeds. There is testimony tending to prove that the mother of complainant stated to Helen that she should not disturb her in her possession during her (Helen's) life, but expected her children to share in the property after her death. It remains, however, that the per-

sons immediately interested took no action, that Helen remained in possession, claiming title to the land by virtue of the deeds for more than 12 years after the death of, Loring. A new generation is attacking and defending the title.

We are not called upon to discuss the effect of this delay upon rights otherwise existing, but we regard it as confirmatory of the correctness of the finding upon which decision is based.

The decree is affirmed, with costs to defendants.

McALVAY, C. J., and CARPENTER, HOOKER, and MOORE, JJ., concurred.