[Sac. No. 1957. Department One.—April 30, 1912.]

In the Matter of the Estate of D. H. LOVELAND, Deceased. EDNA E. BENJAMIN, LETA FRANKLIN and MARY A. CORSON, Contestants and Respondents, v. L. C. BOGLIOLIO, ANNA BOGLIOLIO and LAW T. FREITAS, Appellants.

WILL—INCOMPETENCY OF TESTATOR—FINDINGS—EVIDENCE.—In a contest of a will on the ground of the alleged mental incompetency of the testator, the findings of the court to the effect that the testator was not mentally competent to make a will are held to be sustained by the evidence.

ID.—ADJUDICATION OF INCOMPETENCY IN PRIOR GUARDIANSHIP PROCEEDINGS—EVIDENCE OF UNCHANGED MENTAL CONDITION.—An adjudication of a testator's incompetency, made in a proceeding for the appointment of a guardian of his person and estate cleven days after the execution of his will, while not conclusive in a contest of the will, as to his incompetency at the time of its execution, is proper evidence to be considered on the issue of want of testamentary capacity at the time of the adjudication, and, in connection with testimony tending to show that his mental condition had not changed during the interim, is admissible on the issue of capacity at the time the will was made.

ID.—CONTEST OF WILL—TRIAL ON THEORY THAT INCOMPETENCY IS IN ISSUE—REFUSAL TO ALLOW AMENDED ANSWER TO CONTEST.—In a contest of a will on the ground of the alleged incompetency of the testator, the refusal of the court, after the case had been submitted and decided, to allow the proponents to file an amended answer to the contest to cure a supposed defect in the original answer in its denials

of the allegations of incapacity, is immaterial, where the case was tried on the theory that the competency of the testator was in issue, and the court found upon that question as one of fact.

ID.—WITNESS HAVING BRIEF ACQUAINTANCE WITH TESTATOR—REJECTION OF EVIDENCE IMMATERIAL.—In such a contest, in which the finding of the court that the testator was incompetent is sustained by the evidence, the refusal to permit a witness for the proponent, who had only known the testator for a period of ten or twelve days, to testify as an "intimate acquaintance" to her opinion regarding his mental sanity, will not justify a reversal.

ID.—SANITY AT TIME PRIOR TO PERIOD ATTACKED BY CONTESTANTS.—In such a contest it was proper for the court to refuse to permit the proponents to establish the fact of the testator's sanity at a date three years prior to the time when his competency was attacked by the contestants. In the absence of evidence to the contrary, his sanity during such prior period was presumed, and the proponents had the benefit of the presumption.

ID.—TESTIMONY OF APPEARANCE AS TO PHYSICAL AND MENTAL CONDITIONS.—It was also proper to permit a witness to testify to his observation of the testator's "appearance" with reference to physical and mental conditions. Such testimony is not opinion evidence.

APPEAL from a judgment of the Superior Court of San Joaquin County refusing to admit a will to probate and from an order refusing a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Law T. Freitas, H. I. Stafford, and Stafford & Stafford, for Appellants.

Budd & Van Vranken, and R. C. Minor, for Respondents.

SLOSS, J.—D. H. Loveland died on September 15, 1910, in the county of San Joaquin. On October 10, 1910, there was filed in the superior court of said county a paper purporting to be the last will of said decedent, together with a petition for its admission to probate. By this document the decedent undertook to give the residue of his estate, comprising the bulk thereof, to L. C. Bogliolio and his wife Mrs. Anna Bogliolio, who were in no way related to him, and appointed as executor of his will his "friend and attorney," Law T. Freitas. Edna E. Benjamin, Leta Franklin, and Mary A. Corson, the daughters and sole heirs of Loveland, filed an opposition to the probate of said paper, their grounds of oppo-

sition being that at the date of the execution of the alleged will, the decedent was mentally incompetent to make a will, and that the will had been procured to be made by the undue influence of the Bogliolios and Freitas. A trial without a jury resulted in findings to the effect that the decedent at the time of signing the alleged will was "of unsound mind and incapable from such unsoundness of mind of making a will." On the issue of undue influence the finding was in favor of the proponents. Upon these findings the court entered a judgment denying probate of the will.

From this judgment and from an order denying their motion for a new trial the proponents appeal.

The principal contention made on the appeal is that the evidence is insufficient to justify the finding against the mental competency of the testator.

The contestants introduced evidence tending to show that at the date of the execution of the instrument in question Loveland was over the age of eighty years. He had had four children—three daughters, who are the contestants here, and a son, Willard T. Loveland, who died intestate on March 20, 1910. The will in controversy was dated March 25, 1910, and the estate of which Loveland assumed to dispose by it consisted almost wholly, if not entirely, of his interest in the estate of his son who had died five days before. It appears that the father and son had been on good terms, whereas there had been some degree of estrangement between Loveland and his daughters. Freitas, who was named as executor in the will, had been the attorney of Willard T. Loveland. He had, however, had no acquaintance with D. H. Loveland until the day before the will was drawn. Notwithstanding this fact, we find him named in the will as executor, designated as the "friend and attorney" of the testator, and made the chairman of an advisory "board of arbitrators" attempted to be created by the will for the purpose of settling any controversy that might arise regarding the will.

On the 24th of March, the day before the will was executed, the contestants herein, daughters of D. H. Loveland, filed in the superior court of San Joaquin County a petition, alleging that said Loveland had property in said county, that he had "by reason of his old age, defective memory and physical disability, become mentally incompetent either to care for himself

or to manage his property," and asking that a guardian of the person and estate of said Loveland be appointed. Citation on this petition was served upon Mr. Loveland on the morning of the 25th of March, and it was after such service that he communicated with Freitas and that his will was drawn and executed. The petition for appointment of a guardian came on to be heard before the superior court on the 4th and 5th days of April, 1910, and such hearing resulted in the making of an order whereby the court, after finding that said David H. Loveland was incompetent and incapable of taking care of himself and managing his property, appointed one Thompson as guardian of the person and estate of said David H. Loveland. All of the evidence relating to these proceedings was introduced and received in evidence without objection.

In addition, the contestants offered other testimony bearing upon the competency of the testator. It will be noted that the hearing in the guardianship proceedings took place only eleven or twelve days after the execution of the will. Several witnesses testified that at this hearing Loveland was asked whether he had by his will made residuary gifts to any strangers to his blood, and that in answer to this question he had stated that "it was not his will if it so set forth such legacies." He had also in the course of such examination stated that he had by such will left no property to Mrs. Bogliolio, and that he did not think any one was named in the will as executor. Two witnesses whose testimony was offered as that of intimate acquaintances of the decedent, testified that they did not think Loveland "capable of transacting any business"; that he was not "able to do any kind of business."

At this point the contestants rested, and the proponents proceeded to put in their evidence. The case having been submitted, the court directed that it be reopened for further testimony. The contestants produced additional witnesses, who testified, in effect that, at the time of the hearing in the incompetency proceeding, Loveland was apparently very old, and quite decrepit, that his memory was very defective, that he remembered little or nothing about the making of a will, and was "very uncertain as to just what he had or with regard to any mortgages." Various witnesses testified, in addition, that the mental condition of the testator at the time of the hearing and adjudication in the incompetency proceeding ap-

peared to be the same as on the date of the signing of the will, some ten days earlier.

There was very little conflict in the testimony, the showing made by the proponents being, as admitted by them in their brief, "not of a very strong character." But even if there had been a dispute on every item of testimony, we do not doubt that the proof offered by the contestants was ample to justify the trial court in finding that Loveland was not mentally competent to make a will. Entirely apart from the adjudication of incompetency, it appeared that the testator's faculties had been so far impaired that he had no clear idea of the character or amount of his property and was unable to remember, for even a few days, the provisions contained in the will which he had signed. The will itself contained statements and provisions which, when read in the light of existing conditions, indicated a want of comprehension of the signer's relations to the persons named in the will. But, in addition, we have the adjudication of incompetency, following closely upon the execution of the will. There is no need to discuss appellants' claim that this adjudication was not conclusive on the question of Loveland's competency to make a will. The lower court did not assume to give it such effect. What it did was to admit such adjudication in evidence as showing that at the date of the adjudication, Loveland was so far incompetent as to justify the appointment of a guardian. This may not establish the want of capacity sufficient for the making of a will (*Rice* v. *Rice,* 50 Mich. 448, [15 N. W. 545]), and of course could not fix the *status* of the person affected as incompetent to make a will on a date prior to that of the adjudication. But it is certainly evidence proper to be considered on the issue of want of testamentary capacity at the time of the appointment of the guardian. (*Ames* v. *Ames,* 40 Or. 495, [67 Pac. 737]; *Chase* v. *Spencer,* 150 Mich. 99, [113 N. W. 578]; *Schindler* v. *Parzoo,* 52 Or. 452, [97 Pac. 755]; *Small* v. *Champeny,* 102 Wis. 61, [78 N. W. 407]; *Terry* v. *Duffington,* 11 Ga. 337, [56 Am. Dec. 423].) And where there is testimony tending to show that the mental condition of the person has not changed between the date of the act in question and the appointment of a guardian, the appointment, although later in time, is admissible on the issue of capacity when the act was done. Here the connection between the time of the

incompetency proceedings and that of the making of the will was sufficiently established both by direct testimony that the mental condition of Loveland had not changed in the interval separating the two dates and by the general aspect of the case, indicating, as it did, that any mental weakness on the part of Loveland was the result of that gradual decay which sometimes accompanies advanced age. (*Schindler* v. *Parzoo*, 52 Or. 452, [97 Pac. 755]; *Giles* v. *Hodge*, 74 Wis. 360, [43 N. W. 163]; *Deleglise* v. *Morrissey*, 142 Wis. 234, [125 N. W. 452].)

Complaint is made of the action of the trial court in denying to the proponents permission to file an amended answer to the contest. Leave to file this pleading was not asked until after the case had been submitted and decided, and the refusal to allow the filing might well be sustained on the ground that no adequate excuse for the delay was offered. Furthermore, the filing of the amended answer would have accomplished nothing. The original answer of the proponents was open to the construction that it failed to deny the allegation of Loveland's mental incapacity to make a will. It was sought by the amended answer to correct the defect by raising a distinct issue on this point. But it appears that the trial had proceeded throughout the taking of testimony on the theory that the competency of Loveland was in issue. After the evidence was in, the court declined to grant the contestants' motion for a judgment on the pleadings, and passed on the question of competency as one of fact. The appellants were, therefore, given every advantage which they could have gained by the interposition of their amended answer, and it would have been useless to grant them leave to formally raise an issue which had been decided against them on sufficient evidence.

Some of the rulings of the court in admitting or rejecting testimony are assailed as erroneous. Miss Davis, a stenographer employed by Mr. Freitas, one of the proponents, testified that she had met the decedent ten or fifteen times at the office of Mr. Freitas, and from conversations there had with him, had formed an opinion with regard to "his condition physically and mentally." The entire acquaintance covered a period of only ten or twelve days. An objection to her stating her opinion was sustained, the court basing its ruling on the ground that she was barred from testifying by the pro-

vision of subdivision 2 of section 1881 of the Code of Civil Procedure. We are inclined to think that, on the state of facts shown by the record, the offered testimony did not come within the inhibition of the section cited. But the ruling was not of sufficient consequence to justify a reversal. The showing that Miss Davis was an "intimate acquaintance" of the decedent, and thus qualified, under section 1870 of the Code of Civil Procedure, to express an opinion regarding his "mental sanity" was so slender that the exclusion of her testimony for want of foundation in this particular would have been proper. It is true that this objection was not made, and may therefore be regarded as waived. If, however, the witness had been allowed to state that, in her opinion, Loveland was of sound mind, the fact remains that her opinion would have been based upon so brief and casual a knowledge of the decedent that we can hardly believe that the trial court would, by this testimony, have been materially influenced in its determination of the ultimate issue of competency.

Appellants attack a ruling sustaining an objection to a question put to witness Parkinson, calling for his opinion respecting the competency of decedent. But, as it appears that, at a later stage, the witness was permitted to state his opinion that Loveland was competent, the ruling complained of was not injurious.

A will made by Loveland in 1907 was introduced in evidence. The respondents sought to show that, at the date of the former will, the decedent was of sound mind. The offer of testimony to this end was properly rejected. The contestants had not attacked Loveland's competency at any time prior to 1910, and, if his state of mind when he made the former will was relevant at all, the proponents had the full benefit of the presumption of sanity, which, in the absence of any evidence to the contrary, is controlling. (*In re Wilson*, 117 Cal. 262, [49 Pac. 172, 534]; *Estate of Dole*, 147 Cal. 188, [81 Pac. 534; Code Civ. Proc., sec. 1961.)

There was no error in permitting the witness Thompson to testify to his observation of Loveland's "appearance" with reference to physical and mental condition. This is not opinion evidence. (*People* v. *Manoogian*, 141 Cal. 592, [75 Pac. 177]; *DeArellanes* v. *Arellanes*, 151 Cal. 443, [90 Pac. 1059].) Similar rulings on the testimony of other witnesses

may be supported either on the same ground or on the ground that, where the witnesses were permitted to give their opinions, they had sufficiently qualified as "intimate acquaintances."

The appellants make no other points.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Angellotti, J., concurred.