[Civ. No. 2861. Fourth Dist. July 1, 1942.]

Estate of SIBBILLA B. WORRALL, Deceased. CHARLES EUGENE ALLEN, as Executor, etc., et al., Respondents, v. ALBERT EDSON WORRALL, Appellant.

Luce, Forward, Lee & Kunzel for Appellant.

Lindley & Higgins for Respondents.

BARNARD, P. J.—This is an appeal from a judgment denying a contest of a will and admitting the will to probate.

On September 22, 1939, in a proceeding brought under section 1460 of the Probate Code, Sibbilla B. Worrall was declared to be incompetent and "incapable of taking care of herself and/or managing her property," and a guardian for her estate was appointed. She was then 86 years old. A proceeding for restoration to capacity brought under section 1470 of that code was unsuccessful and was dismissed on February 21, 1940. On June 14, 1940, she executed the will in question, leaving two-thirds of her estate to her daughter and the other one-third to her son and certain grandchildren, share and share alike. The will was offered for probate and the son contested upon the grounds of incapacity to make a will and of undue influence. At the trial, he carefully refrained from offering any evidence as to the competency or capacity of his mother at the time the will was executed and relied entirely on the record of the two guar-

dianship proceedings, to which we have referred. From the judgment upholding the will, he has appealed.

The appellant contends that since this will was executed at a time when the judgment or decree in the guardianship proceeding was still in force, that judgment was conclusive with respect to her capacity to make a will and that the court, therefore, erred in receiving and acting upon evidence as to whether or not she was of sound and disposing mind and memory at the time the will was executed. It is argued that this necessarily follows from a proper interpretation of section 40 of the Civil Code. That section originally read:

"After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power, nor waive any right, until his restoration to capacity *is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined.*" (Italics ours.)

The italicized portion was eliminated by an amendment in 1878 and the following substituted:

"But a certificate from the medical superintendent or resident physician of the insane asylum to which such person may have been committed, showing that such person had been discharged therefrom, cured and restored to reason, shall establish the presumption of legal capacity in such person from the time of such discharge."

It is argued that the first part of this section, which has not been amended, prohibits such a person from making a will until he has been restored to capacity, since a will is a delegation of power; that the section originally contained an exception allowing one who has been actually restored to capacity to make a will although such restoration had not been judicially determined; and that the elimination of this exception by the amendment of 1878 leaves the first part of the section in full force, prohibiting such a person from making a will while the adjudication of incapacity remains in force, with a result that is conclusive in this case.

In our opinion, this interpretation of section 40 of the Civil Code and the effect of the 1878 amendment thereto cannot be sustained. If appellant's interpretation were to be accepted section 40 of the Civil Code would be in conflict with the spirit and effect of section 20 of the Probate Code as the latter section has been consistently interpreted in this state. Under that interpretation, an inquiry into the factual

situation with respect to testamentary capacity at the time the will was executed has always been allowed. ▮ Even an insane person may make a will during lucid intervals if the facts disclose the required elements of capacity at the time in question.

It is unnecessary, however, to hold that there is any conflict between section 40 of the Civil Code and section 20 of the Probate Code. ▮ Section 40 of the Civil Code appears as one of a number of sections relating to the making of contracts and conveyances, and the main purpose in adopting section 40 was to cover activities of that nature on the part of persons adjudged to be of unsound mind. When that section was adopted in 1872, as now, other sections provided not only for the appointment of a guardian, both in cases of insanity and where the person in question was mentally incapable of managing his property, but also provided who might make a will. The Legislature may have had this in mind when, in adopting section 40 in 1872, it added the provision which it eliminated in 1878. In any event, that provision very clearly stated that the requirement for a judicial restoration to capacity, which applied to prohibited conveyances, contracts and delegations of power, should not apply with respect to testamentary capacity, which was left to be determined as a question of fact. The provision thus was consistent with other statutes, and not only recognized that different elements of capacity are involved in making a will and in determining whether a person is in a degree of mental weakness which may cause him to fall prey to designing persons, but its inclusion indicates that the preceding provisions were not intended to control upon the matter of testamentary capacity.

It seems rather clear that originally it was not intended to make the provisions of section 40 which still remain, applicable to testamentary capacity. The section was adopted for quite another purpose, and the reference to making a will was probably inserted as a matter of precaution to make sure it would not be understood as applying thereto. The elimination of all reference to the making of wills, in 1878, and the substitution of a provision for presumptive restoration to capacity in certain cases, indicate an intention to relax somewhat the requirement for judicial restoration in cases where the facts naturally warrant this being done, rather than an intent to extend the conclusive effect of an adjudication of

incompetency to a field which it had never been intended to cover, regardless of the actual facts in that connection and of other rules applicable thereto. By omitting all reference to wills, through the 1878 amendment, it may have been intended to carry out more fully the original intent of the section by eliminating any possible *prima facie* effect of an adjudication of incompetency, since the statute was not designed to cover and affect the matter of testamentary capacity. (See *Estate of Johnson,* 57 Cal. 529.) Be that as it may, it would reasonably appear that this amendment was not intended to change completely the original purpose of the section by so extending it as to give it a conclusive effect over matters which it had expressly excluded from its scope and which were otherwise covered and provided for.

This interpretation is in line with the decisions of the courts of this state. *Estate of Johnson,* 200 Cal. 299 [252 Pac. 1049], involved a contest of a will executed after the testator had been adjudged incompetent to manage her property and a guardian had been appointed. While the contestant in that case was successful the question as to the effect of the prior adjudication of incompetency was presented and considered. The court there said:

"The court instructed the jury that the adjudications of March 22, 1922, and January 31, 1923, declaring the decedent to be an incompetent person in the guardianship proceedings were '*prima facie* evidence of want of testamentary capacity' on the dates of said orders. It is urged that such was not the legal effect of such orders. We are cited to no authority in this state and we have discovered none since the amendment of section 40 of the Civil Code in 1878, holding that an adjudication of incompetency in a guardianship proceeding raises a presumption of testamentary incapacity or is even *prima facie* evidence of testamentary incapacity. *Estate of Johnson,* 57 Cal. 529, construed said section 40 prior to its amendment. Proof of incompetency in a guardianship proceeding is evidence of mental condition on the date of the adjudication but it is not *prima facie* evidence of testamentary incapacity so as to shift the burden of proof to the proponent of the will. (*Estate of Loveland* [162 Cal. 595, 123 Pac. 801], *supra; Rice* v. *Rice,* 50 Mich. 448 [15 N. W. 545].) Notwithstanding the erroneous use of the term '*prima facie*' in the instruction complained of, we are of the

opinion that the appellants were not prejudiced thereby in view of the fact that the court elsewhere fully instructed the jury that said adjudications of incompetency in the guardianship proceedings did not necessarily mean that the decedent was of unsound mind at the time of such adjudications or that she was not then competent to make a valid will. . . . When considered as a whole we think the jury was made clearly to understand that notwithstanding the several adjudications the burden of proving unsoundness of mind on the date of the alleged will was always on the contestant.''

The appellant argues that views exactly opposite to those just quoted were expressed in the later case of *Hellman Commercial T. & S. Bk.* v. *Alden,* 206 Cal. 592 [275 Pac. 794], where the court said: ''The adjudication of mental incapacity therefore applies to both the insane and the incompetent regardless of the character or degree of the mental derangement. No further evidence of mental incapacity is required under our statute while such a decree remains in full force and effect.'' It is argued that this is a holding that a prior adjudication of mental incapacity is conclusive, that no other evidence of mental capacity is required or may be received, and that this is determinative of the problem now before us. No such effect can be given the language of the Hellman decision thus relied on. In using that language the court was considering and discussing an endorsement and transfer of a cashier's check by a person then under an adjudication of incompetency. The language used referred to a situation which was clearly within the purview of section 40 of the Civil Code, and not to any question of testamentary capacity. While it may have been dictum the court, in the Hellman case, further stated: ''It is the settled law of California that an adjudication of the incompetency of a testator is merely *prima facie* evidence of his incapacity to make a valid will.'' Regardless of any distinctions as to whether presumptions exist and what is necessary to constitute *prima facie* evidence these cases indicate a disposition to hold that an adjudication of incompetency is certainly not conclusive evidence of incapacity to make a will. In *Estate of De Graaf,* 34 Cal. App. (2d) 120 [93 P. (2d) 199], a somewhat similar question was presented in that the appellants argued that since the testatrix had been adjudged insane and a guardian had been later appointed for her estate it must be presumed that her inca-

pacity continued and that there was no evidence that her condition had improved. In passing upon that point this court, in effect, stated that any such presumption was nothing more than conflicting evidence, that it could not be said as a matter of law that the testatrix lacked testamentary capacity on the day the will was executed, and that the question was one of fact for the trial court. A similar holding is announced in *Estate of Young,* 38 Cal. App. (2d) 588 [101 P. (2d) 770]. In that case, a will made by an elderly man after he had been adjudged incompetent and a guardian had been appointed for his estate, was upheld, the court approving an instruction to the effect that a prior adjudication of mental disorder was not conclusive on the question of capacity to make a will. The court there said:

"Moreover, proceedings for the purpose of adjudicating the mental status, although satisfactory to all parties concerned, are frequently uncontested and therefore no more comprehensive or extensive than the particular circumstances require. A judgment based upon such a proceeding may be valid but it is not conclusive on the question of decedent's incompetency for the purpose of testamentary disposition."

The appellant argues that the cases to which we have referred have no controlling effect here either because the precise point was not there presented or because the interested party there had waived the point here raised by introducing evidence on the question of the capacity of the testator to make the will and allowing the matter to be tried as a question of fact without standing squarely on the prior adjudication, as was done in the instant case. Whether or not such a matter could be thus waived, if a statute gave a conclusive effect to a prior adjudication of incompetence, need not be considered. In our opinion, no such effect is given in this case by section 40 of the Civil Code, the matter is here squarely presented, and we hold that this section had no application here which prevented or rendered improper an inquiry into the testamentary capacity of this decedent at the time the will was executed and that the court did not err in admitting the testimony objected to, which was ample to sustain the finding made.

The appellant introduced no evidence on the issue of undue influence, relying entirely on certain presumptions from facts which otherwise appeared. It is not, and it could

not well be, argued that the evidence is insufficient in this respect.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 27, 1942.