[Civ. No. 14973. Second Dist., Div. Two. Nov. 21, 1945.]

Estate of JOHN KRAUSE, Deceased. FARMERS & MER-
CHANTS NATIONAL BANK OF LOS ANGELES (a
National Banking Association) et al., Appellants, v.
FREDERICK BUETTNER et al., Respondents.

Musgrove & Cannan and Robert M. Miller for Appellants.

Paul G. Breckenridge, Derthick, Cusack & Ganahl and John J. Beck for Respondents.

FOX, J. pro tem.—This is a will contest. The verdict of the jury was in favor of the contestants on both grounds of contest, viz., mental incapacity and undue influence. From the ensuing judgment denying probate of the purported will of the decedent, John Krause, bearing date of August 1, 1940, the proponents have appealed.

At the time said document was executed the decedent was 85 years of age. He had been married three times. Each of his wives had predeceased him. To the first marriage one child, a daughter, Belle, was born. She married a man named Buettner. To that union eight children were born. Belle predeceased her father. Five children were born of the second marriage of Mr. Krause, four of whom survive. They are the proponents of the will here offered for probate. The fifth child of the second marriage, a daughter, married a man named Robertson. One child, John Robertson, was born of this union. This daughter also predeceased her father. These nine grandchildren are the contestants. There was no issue of Mr. Krause's third marriage.

Mr. Krause had accumulated property of the approximate value of $100,000. Most of it was real estate rented for residential purposes. In February, 1938, he made a will by which he gave each of his grandchildren $100 and the rest and resi-

due of his estate to his four living children in equal shares. About the early part of 1940, with the assistance of his housekeeper, and secretary whom he had employed only a few months previously, he worked out a new plan of disposing of his property and providing for his own future care. Generally speaking, this new plan had the effect of giving to his grandchildren by representation the share which their respective mothers would have received had they survived. This plan included an agreement between Mr. Krause and his housekeeper, Minnie Zeuch, by which she agreed to remain with him and care for him for the remainder of his life at a salary of $50 per month plus room and board and the house, valued at $5,000, in which he lived, reserving, however, a life estate therein. The plan also contemplated that his grandson, John Robertson (the only child of one of his deceased daughters) would then receive title to a piece of property valued at $8,000. Also, a niece would get another piece of property. This new plan took the form of a new will dated March 28, 1940, a written contract of that same date between Mr. Krause and his housekeeper, a deed to her reserving a life estate in himself to the property where he lived and deeds to the grandson, John Robertson, and to the niece of the pieces of property they were to receive. These documents were prepared by his attorney, Dell Schweitzer, who retained possession of the executed will.

Mr. Krause's children learned of this new plan the next day and on April 1, 1940, they all joined in a petition to have him declared an incompetent. The hearing on said petition was concluded on May 17, 1940, resulting in the appointment of his two sons as guardians of his person and the bank herein as guardian of his estate. The grandchildren who were available came to their grandfather's aid during the trial. The housekeeper was immediately dismissed. Shortly after the appointment of the guardian one of the sons called Mr. Schweitzer and asked Mr. Schweitzer to deliver Mr. Krause's will to him. Mr. Schweitzer told him he could not deliver the will to anybody but Mr. Krause notwithstanding a guardian had been appointed. Then Mr. Krause appeared at Mr. Schweitzer's office with one of his sons and requested the will and Mr. Schweitzer handed it to him. This will later disappeared. Actions were filed by the guardian of the estate to set aside the aforesaid contract and deeds which Mr. Krause had executed in his attorney's office on March 28, 1940. These actions resulted in the cancellation of these several docu-

ments. Each action was preceded by a notice of rescission which stated that "at the time said John Krause executed and delivered said deed, he was of unsound mind," that is, on March 28, 1940. In the complaints for rescission it was alleged that he "is and for more than two years last past has been suffering from the effect of a paralytic stroke and from arterio sclerosis, a disease of the kidneys, and is and at all times herein mentioned was feeble and sick in mind and body mentally and physically incompetent to take care of himself or to manage and take care of his property." The order appointing the bank guardian of the estate of John Krause stated that "he is unable and incapable, and has been since the first day of December, 1939, incapable of comprehending his property and of managing and caring for same."

After the appointment of the sons as guardians of his person the grandchildren were not admitted to the house to see their grandfather. Finally his grandson, John Robertson, got a court order permitting him to see his grandfather and took an attorney with him. Will Krause, one of the guardians, refused to permit the grandson and attorney to talk to Mr. Krause alone. This court order was later revoked. The grandchildren were not permitted to talk to their grandfather on the telephone. When the caretaker and his wife took the day off one of the guardians or their sister took charge.

The will of August 1, 1940, which is here offered for probate undertakes to dispose of the decedent's property in much the same fashion as did the will of February, 1938.

The proponents of the will contend that the evidence is insufficient to support the verdict; that the court prejudicially erred in the admission and exclusion of certain evidence; and that the jury was erroneously instructed. None of these contentions, however, warrants a reversal. ▪ The rule with respect to the mental capacity necessary to enable a person to make a will is stated as follows in *Estate of Sexton*, 199 Cal. 759, at page 764 [251 P. 778] : "A testator is of sound and disposing mind and memory if, at the time of making his will, he has sufficient mental capacity to be able to understand the nature of the act he is doing, to understand and recollect the nature and situation of his property and to remember, and understand his relations to, the persons who have claims upon his bounty and whose interests

724

are affected by the provisions of the instrument.'' (See, also, *Estate of Arnold*, 16 Cal.2d 573, 588-9 [107 P.2d 25]; *Estate of Downey*, 51 Cal.App.2d 275, 284 [124 P.2d 637].)

█ In reviewing the sufficiency of the evidence in a will contest the rule to be applied by an appellate court is the same that applies on other appeals, namely, whether or not there is any substantial evidence to support the jury's determination of incapacity. (*Estate of Pessagno*, 58 Cal.App.2d 390 [136 P.2d 644]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].) The weight of the evidence and the credibility of the witnesses are for the jury and the trial court. (*Estate of Ramey*, 62 Cal.App. 413, 425 [217 P. 135]; *Estate of Teel*, 25 Cal.2d 520, 526 [154 P.2d 384].)

█ Tested by these rules it must be said that the testimony together with the inferences that could be reasonably drawn therefrom furnish substantial support for the jury's verdict that the testator lacked the requisite testamentary capacity to make a valid will on August 1, 1940.

In the early part of 1940, and prior to the guardianship trial, a physician, Dr. Roland Cummings, was employed to examine Mr. Krause and thus prepare himself to testify at said hearing as to his mental condition. He testified that ''He [decedent] knows that he has certain properties that are rented, but he does not remember specifically where they are or how many there are, or what his income is from them, or who is collecting the rents.'' He indicated that the decedent was suffering at that time from senile dementia; that it was a disease that grows progressively worse and never becomes better. He testified that Mr. Krause had ''a rather severe sclerosis of the cerebral vessels'' and hence his mind was ''not very alert and active''; that he was ''somewhat childlike.'' He also testified that he had had a stroke of paralysis sometime prior to 1940. The doctor also indicated that Mr. Krause might understand who his sons and daughters were and ''yet might not understand thoroughly about his grandchildren.'' As a result of his examination of Mr. Krause in April, 1940, the doctor ''thought that he was not of sound mind.''

Forest Norquist, the husband of one of the granddaughters, who drove Mr. Krause to court during the early part of the guardianship hearing, testified that he attempted to carry on a conversation with him during that time but

that he would start to say something and would stop and not finish the sentence.

In July, 1940, Mr. Krause mistook one of his grandsons for the paper boy. In August he asked another grandson, John Robertson, who met him at a nearby grocery store to come to see him and bring an attorney. The grandson got a court order and complied with this request. When the attorney asked him if he wanted his competency restored, "Grandpa said 'Yes' and then said 'No'; he just didn't give no definite answer like he didn't quite catch on what he was there for." After a little more conversation, "Grandpa just kind of dozed away, dozed off. . . ." The evidence also indicated that Mr. Krause had physically deteriorated by the summer and fall of 1940 to the point where he did not have control of certain of his physical organs and in that respect was like a baby. He did not pass away, however, until December, 1943.

The judgment of May 17th in the guardianship proceeding was evidence of the mental condition of Mr. Krause on that date (*Estate of Loveland,* 162 Cal. 595, 599 [123 P. 801]; *Estate of Johnson,* 200 Cal. 299, 303 [252 P. 1049]; *Estate of Worrall,* 53 Cal.App.2d 243, 247 [127 P.2d 593]), and would justify an inference that Mr. Krause lacked testimentary capacity at that time. (*Estate of Loveland, supra; Estate of Ehle,* 115 Cal.App. 656, 659-660 [2 P.2d 398]). Like inferences could reasonably be drawn from the findings of the court in the actions to set aside the deeds Mr. Krause executed on March 28, 1940, on the ground, among others, that he was incompetent to execute said instruments. These inferences lend support to the jury's special verdict that on August 1st of the same year Mr. Krause lacked mental capacity to make a valid will. This is particularly true since there was testimony indicating that his physical and mental condition had gradually become worse with the passage of time (*Estate of Loveland, supra,* pp. 599-600; *Estate of Pessagno, supra,* pp. 390-400), and that senile dementia is a condition which does not improve. (*Estate of Alexander,* 111 Cal.App. 1, 11 [295 P. 53].) Certain testimony was also given by some of his children which would justify an inference in support of the jury's verdict of lack of mental capacity. It is true that there was a sharp conflict in the evidence. This, however, was for the determination of the jury and the trial court in passing on the motion for a

new trial. (*Estate of Teel, supra,* p. 530; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) The proponents point to certain testimony on behalf of the contestants which would support a conclusion different from that arrived at by the jury. Such conflicts in the testimony of an individual witness are also for the determination of the trier of the facts. (*Firth* v. *Southern Pac. Co.,* 44 Cal.App. 511, 514 [186 P. 815]; *Showalter* v. *Western Pac. R. R. Co.,* 16 Cal.2d 460, 479 [106 P.2d 895]; *People* v. *Moulton, ante,* pp. 195, 197 [162 P.2d 317].)

Since we have determined that the evidence is sufficient to support the jury's finding of mental incapacity it is not necessary to pass upon the sufficiency of the evidence to support their other finding of undue influence.

██ The proponents complain of the refusal of the court to permit Minnie Zeuch on cross-examination to answer these questions: (1) "Miss Zeuch, during the year 1940, while you were with Mr. Krause, did Mr. Krause appear to know his own properties?" (2) "Miss Zeuch, Mr. Krause did the marketing for the house?" Objection to both questions was made upon the ground that it was not proper cross-examination. The rulings were correct. Counsel for the proponents should not have been misled since counsel for the contestants suggested in reference to the first question and the objection thereto that if the proponents desired to make Miss Zeuch their witness for the question he would have no objection. ██ The proponents complain that during the discussion between the court and counsel to the first question and the objections thereto the court erroneously indicated in the presence of the jury that the adjudication of incompetency of Mr. Krause was a final determination of the fact that he did not know his properties in May, 1940. The remarks of the trial judge do not warrant the interpretation placed upon them. Furthermore, evidence was thereafter admitted on that issue and the jury was fully and fairly instructed on it.

The proponents complain that the court erred in admitting in evidence: (1) the agreement of March 28, 1940, between Miss Zeuch and Mr. Krause; (2) testimony of the grandson, John Robertson, that he was not permitted to keep the property that was conveyed to him on March 28, 1940; (3) the testimony of the grandchildren that they did not receive notice of their grandfather's death and funeral; and (4)

the complaints, findings of fact and judgments in the actions to set aside and cancel the deeds and contract that John Krause executed on March 28, 1940.

It was not improper to admit in evidence the agreement between Miss Zeuch and Mr. Krause. The decree in the guardianship proceeding had been admitted in evidence and read to the jury. This decree stated that Mr. Krause had been "under the dominating influence" of Miss Zeuch since December, 1939, and had been subject to her "desires and wishes." This agreement served to show the arrangement that the parties had entered into and their relationship, and had a bearing on the weight and credibility of her testimony. This was evidently appreciated by counsel for the proponents since he read the entire agreement to the jury.

There was no error in admitting the testimony of John Robertson that he was not permitted to keep the property his grandfather had deeded to him on March 28, 1940. It was the theory of the contestants that the decedent had expressed his intention of giving to his grandchildren the share in his estate which their mothers would have received had they survived him; that is to say, Robertson was to receive one-sixth of the estate and the Buettner heirs one-sixth. The piece of property deeded to Robertson was valued at $8,000, and in the will executed on the same date he was named as one of four residuary legatees. This deed, however, had been set aside in an action by the guardian of Mr. Krause's estate. Under contestants' theory it was proper to show this chain of events so that the jury might have the entire picture before them. Even if such evidence be considered immaterial it is difficult to see how it could be prejudicial to the proponents. No such showing is made.

One of the grounds of contest was undue influence. The testimony of the grandchildren that the children of Mr. Krause failed to notify them of his death or funeral was admissible on that issue. There is considerable evidence in the record indicating that the children sought to isolate Mr. Krause from his grandchildren and from which the inference could be drawn that the children were attempting to alienate him from them. This testimony would tend to indicate unfriendliness on the part of the children toward the grandchildren and an attempt to prevent them from knowing anything about their grandfather or his affairs.

Such evidence was proper for the consideration of the jury in passing on the question as to whether or not the children unduly influenced their father to substantially disinherit his grandchildren. (See *Estate of Teel, supra*, p. 529.)

 The findings and judgments in the actions to set aside the deeds and contract executed on March 28, 1940, were admissible in evidence as tending to show the mental condition of Mr. Krause on that date and from which the jury might reasonably draw an inference that he then lacked testamentary capacity and, when considered with the other evidence of his mental and physical condition thereafter, that he lacked such capacity when the will of August 1st was executed. In view of the manner in which the findings were drawn, viz., that certain allegations of the complaint were true, it was necessary to have the complaints in evidence so that the findings might be intelligible. In this connection it must be remembered that it was the execution by Mr. Krause of the deeds and contract which these actions were brought to cancel that caused the four children to jointly petition to have him declared incompetent and a guardian of his person and estate appointed. The inference is therefore clear that these actions by the bank as guardian of his estate, if not filed at the instigation of the children, were filed and prosecuted with their knowledge and consent and cooperation. They should therefore not be permitted to escape the effect of reasonable inferences that might be drawn from the findings and judgments which they were instrumental in procuring. (*Harlan* v. *Harlan*, 70 Cal.App. 2d 657 [161 P.2d 490].)

 Finally, the proponents complain of the refusal of the trial court to give one of their proposed instructions on testamentary capacity. The instruction was "Refused as repetitious." There was clearly no error in not giving the requested instruction since the court gave an instruction on the subject, the correctness of which is not challenged and which is practically identical with the rejected instruction.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.