[Civ. No. 20555. First Dist., Div. Three. Dec. 5, 1962].

Estate of ANDREA FOSSA, Deceased. EDWARD J. CLARK et al., Plaintiffs and Appellants, v. WILLIAM J. RAFFETTO, JR., et al., Defendants and Respondents.

Molinari, Casalnuovo & Berger, Stephen L. Mana and Leonard B. Berger for Defendants and Respondents.

SALSMAN, J.—Appellants contested the will of Andrea Fossa on the ground of lack of testamentary capacity. Respondents' motion for a directed verdict was denied. The jury was unable to reach a verdict, and respondents then moved for entry of judgment in their behalf, pursuant to Code of Civil Procedure section 630. The court granted respondents' motion and admitted the will to probate. This appeal challenges the judgment.

It is long established that in ruling on a motion under Code of Civil Procedure section 630 the trial court is governed by the same rules which circumscribe its power to grant a motion for a nonsuit. (*Estate of Lances*, 216 Cal. 397, 400 [14 P.2d 768]; *Jaehne* v. *Pacific Tel. & Tel. Co.*, 105 Cal. App.2d 683 [234 P.2d 165].) If there is any substantial evidence tending to prove in favor of the contestants all the facts necessary to make out their case, they are entitled to have the case go to the jury for a verdict on the merits.

In our consideration of this appeal we must take as true all evidence tending to prove the contestants' case, together with all reasonable inferences to be drawn from such evidence, disregard all evidence which does no more than raise a conflict with that of the contestants, and determine therefrom if it can be said that on no legal theory have contestants made a prima facie showing of testamentary incapacity. (*Estate of Ivey*, 94 Cal.App. 576 [271 P. 559]; *Sweet* v. *Markwart*, 115 Cal.App.2d 735 [252 P.2d 751].) We turn, therefore, to an examination of the evidence in the light of the rules stated.

The contestants produced evidence to establish these facts: The will of the testator was made about noon on July 30, 1959, while he was in the hospital. He had been declared incompetent by order of the superior court just 30 minutes before he executed his will. He had been in the hospital since June 24, 1959. He had surgery on June 30th. He died five days after the execution of the will. On July 15, 1959, his attending physician had left written orders, a part of the hospital records, that he "Advised no signing of legal papers by P. T., patient, by visitors. Patient not responsible." The letters of guardianship were used by the attorney to gain entrance to the testator's hospital room. The attorney filled in various matters on a previously purchased form will. Because of his weakened condition the testator was unable to sign the document, but placed a mark on the will. The only

persons present at the time were the attorney, a witness, and the person named as executor.

Dr. Mitchell, testator's attending physician, had attended him since July 1956, and continued as his physician until his death on August 4, 1959. The testator had a combination of ailments, including cirrhosis of the liver, stones in the common duct, jaundice, and hepatitis. During the three weeks before his death on August 4th he was not able to eat or drink, was nauseated, had spells of vomiting, and was kept alive by intravenous feedings. On July 30th, the date on which he was declared incompetent by the superior court, and on which he executed the will in question, he was not able to recognize people, and did not recognize his doctor when the doctor called on him about 10:45 in the morning. The testator had been going downhill since about the middle of July. His doctor stated that at or about the date of the execution of the will the testator could not make any decisions whatsoever and that for the last two or three weeks before his death he did not have any recollection or memory, and was incompetent. On July 30th he was in a semi-coma, weak, confused and unable to recognize the doctor. At 10:45 on the morning of July 30th when Dr. Mitchell saw the testator, the latter was unable to talk to him. The doctor testified that while the testator might have been able to move his arms when he made the will an hour and a half later, it was not sound that he could have lucid moments or become mentally alert. From July 30th to August 4th Dr. Mitchell never saw the testator alert, competent or able to understand things, and on the 30th he was critically ill, confused, and not mentally alert.

Dr. Leland, a medical examiner for the superior court in San Francisco, examined the testator on July 26, 1959, and testified that while the testator recalled a number of things, he did not know the name of the Governor, the President, or what he had had for breakfast that morning. He further testified: "At the time I thought he was certainly incompetent to take care of his affairs because he was a very, very sick man. He was deeply jaundiced and appeared very, very weak."

A Mr. Charles Roach testified that he had known the testator since 1957 and visited him in the hospital on July 27th or 28th and again on July 31, 1959. On these occasions the testator did not recognize this witness at all and was in

a comatose condition, not able to talk or carry on a conversation.

Helen W. Clement, who had known the testator for 20 years, testified that she visited him July 29th and July 30th. He did not recognize her and could not carry on a conversation. He just mumbled and grunted and appeared to be too far gone to care.

Edward J. Clark, a life-long friend of the testator, visited him on July 29th and found him unable to talk or to respond at all.

This brief review of a portion only of appellants' evidence convinces us that there was substantial evidence of lack of testamentary capacity on the part of the testator, and that it was appellants' right, guaranteed by Probate Code section 371, to have this evidence evaluated by a jury.

The respondents contend, however, that evidence produced by them through the testimony of unbiased and disinterested witnesses clearly shows that at the very moment of the execution of the will the testator was competent in that he knew what he was doing, knew the nature and extent of his property, and understood his relationship to those persons who were the natural objects of his bounty. This evidence cannot aid respondents. On this appeal, under rules previously cited, this evidence must be disregarded by us, as indeed it should have been disregarded by the trial judge in passing on the motion for judgment. This is so because respondents' motion under Code of Civil Procedure section 630 was in legal effect a demurrer to appellants' evidence, and the value and effect of appellants' evidence was the only proper subject for the court's consideration. (*Estate of Lances, supra,* 216 Cal. 397, 400-401.)

Respondents seek comfort in the rule which casts the burden of showing by a preponderance of the evidence that, at the very moment the will was executed, the testator lacked testamentary capacity. (*Estate of Powers,* 81 Cal.App.2d 480 [184 P.2d 319].) It is true appellants produced no such evidence. Nevertheless, evidence of mental condition of the testator before and after the execution of his will was admissible and must be considered insofar as it relates to and tends to show mental condition at the time of the execution of the will. Here there was evidence that the testator had been adjudicated an incompetent person within half an hour of the execution of the will. This fact alone would not be determinative, but the adjudication is evidence of the

mental condition of the testator as of the date of adjudication (*Estate of Loveland,* 162 Cal. 595, 599 [123 P. 801]) and would justify an inference of lack of testamentary capacity at that time. (*Estate of Krause,* 71 Cal.App.2d 719, 725 [163 P.2d 505].) Moreover, there was other evidence before the court, previously recited herein in part, which, together with the adjudication of incompetency, constituted substantial evidence sufficient to preclude the trial court from granting a motion for judgment in this case. (*Estate of Wolf,* 174 Cal. App.2d 144, 149 [344 P.2d 37].)

 The order for entry of judgment in accordance with the motion for a directed verdict is not appealable. The appeal properly lies from the judgment. (*Stiles* v. *American Trust Co.,* 137 Cal.App.2d 472 [290 P.2d 614].)

The appeal from the order is dismissed. The judgment is reversed. Appellants to recover costs on appeal.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied December 20, 1962, and respondents' petition for a hearing by the Supreme Court was denied January 30, 1963.