### NELLIE M. RICE v. PARLEY H. RICE ET AL.

*Wills—Testamentary capacity—Opinion evidence—Bill of exceptions—Costs of record.*

A probate order adjudging a man "incompetent to have the care of his property" and appointing a guardian for him, is not prima facie evidence that he lacks testamentary capacity; nor does it become so by the recital in the order that he is insane, if the petition for guardianship does not put his sanity in issue. But such an order may be put in evidence as bearing on his condition.

One who has capacity to make a contract is competent to make a will.

A non-professional witness, in giving his opinion as to a person's sanity, can speak only from personal observation; but his opinion is not admissible in evidence if he does not, as far as possible, explain to the jury the grounds for it.

In examining a non-professional witness, as to a person's capacity to execute a will, *it seems* to be improper to put a hypothetical question containing a confusing number of elements as to the various items of his property and the members of his family, and then require the witness to arrive at a result by comparing the testator's appearance

and conversation, as he had described it to the jury, with what the witness had known of him formerly.

Delusions as to "Greenbacks" or to the effect that one is holding or running for office, or that his wife courted him, or had maltreated him after marriage, do not necessarily render a man incompetent to make a will if they do not influence its provisions.

A will is not to be set aside merely because its maker was weak or sometimes foolish or lacked the average mental capacity of his neighbors, or did not dispose of his property as others, who knew nothing of his reasons, might think he ought to have done.

The preparation of a bill of exceptions by simply tacking a heading and a conclusion to the stenographer's notes of the testimony is rebuked.

Where a bill of exceptions was three times as large as it need have been to present all the questions involved and appellant prevailed, he was allowed, in taxing costs, to include only one-third of the expense of the record.

Error to Kalamazoo. (Mills, J.) April 19.—April 25.

Appeal from probate of will. Proponent brings error. Reversed.

*Hawes & Shakespeare* for appellant. **Opinions** as to mental capacity must be accompanied by the facts on which they are based : 2 Greenl. Ev. § 691 ; 1 Redf. Wills 137, 142, 143 ; *Beaubien v. Cicotte* 12 Mich. 500 ; *Grant v. Thompson* 4 Conn. 203 ; *Kempsey v. McGinniss* 21 Mich. 122 ; *Potts v. House* 6 Ga. 324 ; *Gibson v. Gibson* 9 Yerg. 330 ; *Vanauken's case* 2 Stock. Ch. 190 ; *Lester v. Pittsford* 7 Vt. 161 ; *Morse v. Crawford* 17 Vt. 499 ; *Norman v. Wells* 17 Wend. 163 ; *De Witt v. Barly* 17 N. Y. 340 ; *Hathorn v. King* 8 Mass. 371 ; *Dickinson v. Barber* 9 Mass. 225 ; *Needham v. Ide* 5 Pick. 510 ; *Rambler v. Tryon* 7 S. & R. 90 ; *Doe v. Reagan* 5 Blackf. 217 ; *Harrison v. Rowan* 3 Wash. C. C. 580 ; *State v. Pike* 49 N. H. 399 ; *Hardy v. Merrill* 56 N. H. 227 ; a recital, in an order appointing a guardian, that the alleged incompetent is insane, may be evidence of his incompetency in subsequent proceedings to set aside his will, but is not conclusive : 1 Greenl. Ev. 528, 556 ; 1 Jarm. Wills 35 ; *Hart v. Deamer* 6 Wend. 497 ;

*Breed v. Pratt* 18 Pick. 115; *Comstock v. Hadlyme* 8 Conn. 254, 264; *Kinne v. Kinne* 9 Conn. 102, 104; *Stewart v. Lispenard* 26 Wend. 255; *Barry v. Butlin* 6 Eng. Ecc. 418; *State v. Pike* 49 N. H. 399; intellectual feebleness will not deprive a man of the right guaranteed by law to dispose of his estate by will : 1 Will on Ex. 18, 19 : 3 Am. L. Reg. (N. S.) 11; *Jackson v. VanDusen* 5 Johns. 144; *Jackson v. King* 4 Cow. 207.

*O. W. Powers* and *H. C. Briggs* for appellees.    An inquisition of lunacy if taken on notice to the subject of it, is prima facie evidence of testamentary incapacity during the period expressly overreached by it, and if a guardian is thereupon appointed, is conclusive evidence of incapacity from the time of the finding, until further direction of the court, except that a will may be proved to have been made in a lucid interval : Abbott's Trial Ev. 119; *Rippy v. Gant* 4 Ired. (N. C. Eq.) 443; *Breed v. Pratt* 18 Pick. 115; *Wadsworth v. Sherman* 14 Barb. 169; *Lewis v. Jones* 50 Barb. 645; *Banker v. Banker* 63 N. Y. 409; *Hall v. Warren* 9 Ves. 605; if a testator is shown to have been insane before making his will, his insanity is presumed to have continued unless there is proof to the contrary : Abbott's Trial Ev. 734; *People v. Francis* 38 Cal. 183; *Carpenter v. Carpenter* 8 Bush 283; *Thornton v. Appleton* 29 Me. 298.

COOLEY, J.    The writ of error in this case brings before us the proceedings on the probate of the will of William H. Rice, late of the county of Kalamazoo, who died December 3, 1880.    Plaintiff in error is his widow and was named sole executrix in the will.    Defendants are his heirs at law.    The will was admitted to probate in the probate court, but denied it in the circuit court.    Two objections were made to it in the pleadings :    *First*, that Rice was insane when he executed it; and *second*, that it was obtained from him by undue influence.    This second objection was abandoned on the trial.

A copy of the will is given in the margin,* and its provisions are seen to be simple and not obviously unreasonable. The evidence disclosed the fact, however, that on the day of its execution proceedings were pending in the probate court for the appointment of a guardian for Rice, and the appointment was actually ordered a few hours after the will had been signed and attested. As these proceedings were made important and perhaps controlling by the rulings of the circuit judge, it is necessary to understand exactly what they were.

The petition for the appointment of a guardian was made by two of the children of Rice, and by a third person, whose relations to him are not stated. The petition states that Rice is possessed of real and personal estate, estimated at $21,500, and that he is, as petitioners believe, " mentally

---

*WILL OF WILLIAM H. RICE.

In the name of God, amen. I, William H. Rice, of the township of Comstock, in the county of Kalamazoo and State of Michigan, of the age of sixty-eight years, and being of sound mind and memory, do make, publish, and declare this my last will and testament, in manner following ; that is to say :

First. I give and bequeath to my wife, Nellie M. Rice, the sum of two thousand dollars ; also my house and lot in the village of Kalamazoo, on Dutton street, number forty-three.

Second. I give and bequeath to my son Parley H. Rice the north one hundred acres of what is known as my swamp land in the township of Comstock, Kalamazoo county, Michigan, this being in addition to the sum of six thousand dollars, including interest, that I have already advanced the said Parley H. Rice.

Third. I give and bequeath to my son Noah Rice the west one hundred and ten acres of my present homestead.

Fourth. I give and bequeath to my two grandsons, children of my deceased son Henry, the east forty acres off the east end of my present homestead ; also the one hundred and twenty acres of land on the swamp, just south of the land bequeathed to my son Parley.

Fifth. I give and bequeath to John Dunlap, son of my second wife, forty acres of land on section twenty (20) just south of land owned by W. F. Stillwell, in the township of Comstock.

Sixth. I desire it to be distinctly understood that the bequest to my wife is in addition to any and all rights of dower she may be entitled to in my estate.

And lastly. I give and bequeath all the rest and residue and remainder my personal and real estate to my two sons before mentioned, and the heirs of my son Henry now deceased, in equal shares, and I hereby appoint my wife, Nellie M. Rice, sole executrix of this my last will and testament, hereby revoking all former wills by me made.

In witness hereof I have set my hand and seal this seventh day of November, A. D. 1879.

WM. H. RICE.

incompetent to have the charge and management of his property," and that, as they are informed and believe, he "is expending and has expended money within the past few days foolishly and unnecessarily, and for articles and property which he did not need, and paid and agreed to pay more than the same was worth." Rice was notified to answer, and appeared and procured an adjournment, but on the adjourned day, instead of contesting the application, went to the office of Mr. Shakespeare, an attorney, and had his will prepared and executed, and then went home. The petitioners appeared before the probate judge, and the order appointing a guardian was made, the judge reciting therein that it appeared to him that Rice was "insane and incompetent to have the care of his property." Rice was at this time sixty-eight years of age, and had been married to the plaintiff about three years and six months.

The defendants in this case contended that the order appointing a guardian was prima facie evidence of the incapacity of Rice to make a will, and that the plaintiff must overthrow this prima facie case by affirmative evidence. The circuit judge assented to this view, and instructed the jury as follows : " This determination of the probate court is on the first view, or prima facie, evidence of the testator's insanity and incapacity to make a will, and shifts the burden of proof to the proponents, and renders it necessary for them to establish before you by a preponderance of the evidence that the deceased was mentally competent to make a will at the time of the execution of the instrument here proposed for probate."

If the question of testamentary capacity had been involved in the application for the appointment of a guardian, and had been determined by the appointment, the circuit judge would have been correct in his ruling. But in fact it was in no way involved. The substantial averment in the petition was that Rice was mentally incompetent to have the charge and management of his property, and was wasting it. Insanity was not alleged or put in issue, and the recital of the existence of insanity in the order which was made

was very likely an inadvertence. But, whether inadvertent or intentional, it went beyond anything to which Rice had been called upon to answer, and was of no force. The order judicially determined that Rice had become unfit to manage his property, and it determined nothing more. But this is not inconsistent with testamentary capacity; the state of being unfit to manage property is not even inconsistent with capacity to make contracts; and the principal reason for the appointment of a guardian often is that a party possessing the capacity and power to contract is employing it foolishly. But if a party has capacity to make a contract, and to bargain in respect to its terms with another who may be supposed to have an interest in getting the better of him, he must certainly have authority to execute, as his own voluntary and spontaneous act, a testamentary disposition of his property. Testamentary capacity is not, therefore disproved by the determination that cause exists for guardianship.

It follows that the circuit judge erred in his rulings respecting this appointment. It was competent to prove it, as a part of the decedent's history contemporaneous with the alleged testamentary act, and as throwing light upon his actions and conduct about that time; but as an adjudication it was without important bearing.

A number of witnesses who had known the decedent in his life-time, and had seen more or less of him at about the time the will was executed, but who were not medical experts, were allowed to testify that in their opinions he was then insane. Some of them expressed opinions in connection with a statement of facts upon which the opinions were based, and some apparently did not. These opinions were objected to, but were received upon the supposed authority of decisions by this Court. The cases relied upon were evidently misunderstood. In *Beaubien v. Cicotte* 12 Mich. 459, 501, opinions by non-professional witnesses were held to be admissible, when they could speak from personal observation, but it was said that " in every case the witnesses who speak from their own observation are expected to describe, as well as they can, what has led

to their conclusions, as well as their means of observation." In *Kempsey v. McGinniss* 21 Mich. 123, 138, a similar statement is made : " In the case of such professional witnesses, as well as in that of unprofessional witnesses,—who are allowed to give their opinions only from personal observation,—the facts upon which the opinion is founded must be stated, and the jury must be left to determine whether the facts stated, as well as the opinions based upon them, are true or false." The principle of these cases is that the witnesses must explain to the jury the grounds for their opinions so far as the circumstances will admit; and we are constrained to say that in some instances this was not done on this trial, and that opinions were received of the reasonableness of which the jury were given by the facts stated no means of judging.

This error may have had an important influence in the case, for it is very evident that some of the witnesses had no just conception of what was meant by insanity or by testamentary capacity. And some of the questions had a plain tendency to mislead them in this regard. Thus, this question was put to one witness : " Well, supposing him to have had a valuable farm of 160 acres of land, and some hundreds of acres of swamp land, and some real estate in the village, and some personal farm property, and also to have had a wife and children and grandchildren, what would you say in your opinion as to his ability to plan and execute a will, judging from what you related to the jury as to his appearance and conversation, and what you knew of him formerly ? " Here the suggestion to the witness by the question is of something complicated and difficult, requiring a recollection and comprehension of the several items of a considerable estate, and the several members of a considerable family, and he is invited to compare the man as he then was with the man as he had formerly known him. If, under such circumstances, the witness is impressed that there has been a great weakening of mental powers, as it seems probable was the case here, it will not be surprising if he expresses an opinion unfavorable to mental capacity for the supposed act. But no act can well be more simple

than the gift of his property by an old man to the members of his immediate family; and it ought not to be considered, by court, or witness or juror, to be an act requiring strong mind or considerable capacity. The power to make such a gift becomes an important protection in that period of life when incapacity to labor and to conduct profitable enterprises has arrived, and it is important to see that it be not taken away by erroneous notions as to what is required for testamentary capacity. It is very evident, we think, that some of the witnesses in this case expressed opinions to the jury which had been formed by standards altogether incorrect and misleading; and the opinions themselves were consequently worthless.

Much of the evidence in the case, which was put in to prove insanity, had a tendency to show delusions on certain subjects. The decedent, it is said, talked foolishly about "greenbacks;" he imagined himself a high federal officer, and he solicited votes for an office when no election was pending. But we look in vain in the will, whose provisions were dictated by himself, for any trace of these delusions, or any evidence that it was in any way influenced by them. Conceding the delusions, therefore, does not dispose of the will, or necessarily determine that it should be set aside. *Fraser v. Jennison* 42 Mich. 206. The most remarkable evidence on this branch of the case is of statements made by decedent that his wife made the advances in courtship, and that on one or more occasions she inflicted outrageous personal injury on him after marriage. No attempt was made to show that the decedent was really under delusion in respect to these matters, and the natural tendency of the evidence was to prejudice the jury against the plaintiff by leading them to believe or to suspect that she was an unworthy person and undeserving of her husband's bounty. But the existence of a delusion that his wife was unworthy of esteem, or was abusing him, would be a singular reason for setting aside a gift which he had deliberately made in her favor.

Such errors as occurred in the instructions are sufficiently

indicated by what has been already said. After the full examination of the general subject of testamentary capacity in the case of *Pierce v. Pierce* 38 Mich. 412, and *Fraser v. Jennison* 42 Mich. 206, we do not deem it necessary to enlarge upon it here. But we repeat what we have said in substance in those cases, that a will is not to be set aside merely because the party making it was weak, or sometimes foolish, or lacked the average mental capacity of his neighbors, or did not dispose of what was his own as others who could know nothing of his reasons might think he ought to have done, nor necessarily because he was subject to delusions, when it is manifest that the delusions did not affect his gifts.

The case must go back for a new trial, and the plaintiff in error must recover the costs of this Court.

We are compelled to say, however, that the record which has been brought to this Court is inexcusably voluminous. The bill of exceptions is apparently made by simply attaching a heading and a conclusion to the stenographer's notes, and it was at least three times as large as was necessary for presenting the alleged errors. This method of preparing a bill of exceptions may be labor-saving to counsel, but it is oppressive in its expense to the parties and it imposes unnecessary labor in dealing with the case in this Court. In taxing the costs, therefore, the plaintiff will be allowed for one-third the expense of the record, and no more.

The other Justices concurred.