This is an appeal from an order of the district court, denying the admission of a will to probate. The testatrix, Mrs. Red Corn, Wah-kon-tah-he-um-pah, was an Osage Indian allottee. Her will was offered to the county court and admitted to probate. John Woods, one of the legatees mentioned in the will, joined by other defendants in error herein, protested against the probation of such will, and upon its being admitted to probate appealed from the county court to the district court, where the validity of the will was tried de novo.
Proponent, plaintiff in error, introduced the will in evidence, and introduced the testimony of the subscribing witnesses and other witnesses, that at the time of making such will the testatrix was of lawful age, sound mind and memory, not acting under duress, menace, fraud, or undue influence, that she understood the terms of the will, what disposition she wanted made of her property, and to whom she desired to bequeath it. These facts were each proved by the positive testimony of witnesses whose credibility is not assailed and were introduced in order to meet and disprove the allegations in contestant's answer or protest.
At the conclusion of the proponent's testimony, contestants, defendants in error, offered no testimony, but demurred to the testimony of proponent. The demurrer was overruled, whereupon contestants then moved for judgment denying the probate of such will, and the court, though it had overruled the demurrer to the testimony, sustained the *Page 2 
motion for judgment denying the probate of the will, and proponent, plaintiff in error, brings the cause here.
There is but one main question involved: Whether the proponent sufficiently met the requirements of law as to the validity of the will; that is, whether he made a prima facie case, which, in the absence of rebutting testimony, showed a valid will.
The legal effect of the demurrer being to confess the truth of the testimony submitted by proponent, it seems to us that every requirement of the law was sufficiently met, and that in the absence of any rebutting testimony the trial court was correct in overruling the demurrer, but erred in denying the probate of the will.
Two questions are presented by contestants, defendants in error, vix.:
(1) That testatrix having been adjudged incompetent to manage her estate and a guardian having been appointed to manage her affairs, she could not make a valid will until judicially restored to competency.
(2) The order of the county court adjudging her incompetent to properly manage her estate and appointing a guardian for such purpose had the effect of adjudging her mentally incapacitated to make a will.
Deferring discussion of these two propositions for the present, the showing made by proponent may be summarized as follows:
The full text of the will together with all acknowledgments and indorsements is as follows:
"I, Mrs. Red Corn, alias Wah-kon-tah-he-um-pah, Roll No. 482, do hereby make, publish and declare this following to be my last will and testament:
"1st. I give and devise to my husband, Mr. Red Corn, alias Wy-e-gla-in-kah, Roll No. 481, my homestead estate.
"2nd. I give and devise to my brother, Wy-ne-she, Roll No. 518, my second filing.
"3rd. I give and bequeath to John Woods $1,000.00.
"4th. I give and bequeath to Cora Oglesby $1,000.00.
"5th. I give and bequeath to Jennie Gray $1,000.00.
"6th. I give and bequeath to my house located at the Indian Village to Ralph Malone.
"7th. I give and bequeath to Lloyd Malone, the oldest son of Ralph Malone, the sum of $1,000.00.
"8th. I give and bequeath to Raymond Red Corn Nycon Iron $500.00 each.
"9th. I give and bequeath to John Oglesby $1,000.00.
"10th. All the rest and remainder of my estate, including all royalties, annuities, and trust funds and all and every estate real and personal of which I may die possessed I give, bequeath and devise to my husband, Mr. Red Corn, alias Wy-e-gla-in-kah, whose Roll No. is 481.
"I hereby appoint and designate A.A. Exendine, an attorney of Pawhuska, Oklahoma, my executor of this my last will and testament.
"Mrs. Red Corn, nee Wah-kon-tah-he-um-pah.
"Subscribed by Mrs. Red Corn, alias
"[Mark.]
"Wah-kon-tah-he-um-pah, in the presence of each of us the undersigned, and I, Orlando Kenworthy, at her request signed her name and she placed her thumb mark to her signature in the presence of each of us, the undersigned, and at the same time declared the same to be her will and testament and we thereupon at the request of Mrs. Red Corn, alias Wah-kon-tah-he-um-pah, Roll No. 482, in her presence and in the presence of each of us sign our names hereto, as witnesses and further state that each of us, fully understand both the English and Osage language, and that Orlando Kenworthy, one of the witnesses, read and interpreted the foregoing will to her and caused her to understand the same, and that this will consists of one sheet of paper executed this 15th day of August, 1920, at the Indian Village, near Pawhuska, Oklahoma.
"Witnesses: Edward Brunt,
"John McFall,
"Orlando Kenworthy."
"Department of the Interior of Indian Affairs, March 15, 1921.
"The within instrument, dated August 15, 1920, purporting to be the last will of Wah-kon-tah-he-um-pah, or Mrs. Red Corn, deceased, Osage allottee No. 482, is hereby recommended for approval in accordance with the provisions of the Act of April 18, 1912 (37 Stat. 86-88), and the regulations of the Department.
"Respectfully,
"E.B. Merritt,
"Assistant Commissioner."
"Department of the Interior,
"Office of the Secretary,
"March 22, 1921.
"The within will of Wah-kon-tah-he-um-pah or Mrs. Red Corn, deceased Osage allottee No. 482, is hereby approved under the Act of April 18, 1912 (37 Stat. 86-88), and regulations of the Department.
"S.G. Hopkins, "Assistant Secretary."
The testimony in substance was that Mrs. *Page 3 
Red Corn was an aged woman, that she was in an Indian village near Pawhuska and sent a Mr. Kenworthy to Pawhuska for a lawyer, Mr. Exendine, to draw her will. Kenworthy was not a legatee, but was a witness to the will and acted as interpreter for the lawyer and testatrix as to what she wanted done with her property; that the lawyer made a pencil memorandum of the names of the legatees and the portion which each was to receive; that after taking these pencil notes the lawyer went out and borrowed pen and ink and drew the will, returned to the tent where the testatrix was staying, and each clause, each devisee, and each provision of the will was read separately by the lawyer, interpreted to her by the interpreter, and to each provision she both nodded her assent and said in English "all right"; it appears that she knew the meaning of the words "all right"; that after each provision was gone over separately, the entire will was read over and interpreted as a whole to her, and that she gave the same assent thereto.
The testimony of other witnesses showed that she was of sound mind, capable of knowing and did know what disposition she desired to make of her property, and to whom she was bequeathing it; that she was under no influence other than her own will and desire; that all the steps toward the making and execution of the will were had at her request.
Every requirement of the law to constitute a valid will, it seems to us, was sufficiently met by testimony of disinterested witnesses, witnesses who received no benefits from the will; in fact, no contention is made that the proof failed in any wise to meet all requirements of the law, but protestants rely solely upon the two propositions, "that she had previously been adjudged incompetent to manage her business affairs and a guardian appointed," and "that such incompetency not having been judicially removed, she was legally incapacitated to make a will."
It is probable that the trial court sustained the motion for judgment and denied admission of the will to probate on the above two propositions, although it is not clear from the record upon what ground it was denied. It could not have been denied upon the ground that the evidence was insufficient in any particular, because the court overruled the demurrer to the evidence; the court then must have rendered judgment upon the above grounds, argued by defendants in error in support of such judgment. The mere fact of her having been adjudged incompetent to manage her property and business affairs and that such incompetency had not been judicially removed is not sufficient of itself to show a mental incompetency to make a will, nor does the existence of a guardianship, of itself, render one legally incapacitated to make a will. The uncontradicted positive testimony of a number of disinterested witnesses was that she was mentally competent to make a will at the time she made it. In the face of this testimony the mere fact of her having been adjudged incompetent to properly manage her business affairs is not of itself sufficient to legally constitute mental incompetency. There was no evidence offered nor any contention made that even at the time the guardian was appointed to manage her business affairs, that she was even then mentally incompetent to make a will. The evidence showed that she was, at that time, advanced in years; it appears from the record that her property consisted of allotments, royalties from mineral and oil leases, and her proportionate share of the monies due the Osage Tribe from the government; under such circumstances she might reasonably have been incompetent to successfully manage her business affairs and yet been fully competent to know what she wanted done with her property when she died and to whom she wanted to leave it. The question of mental capacity to make a will is not one of law, but of fact. Bilby v. Stewart, 55 Okla. 767, 153 P. 1173; Dickey v. Dickey, 66 Okla. 269, 168 P. 1018; also notes to Slaughter v. Heath (Ga.) 27 L.R.A. (N.S.) 1.
The time of the making and execution of the will is the point of time from which the mental capacity of testator must be determined. See 40 Cyc. 998, and authorities cited.
The evidence in this case, being uncontradicted, is sufficient to show mental capacity at the time the will was executed.
The fact that a testator may be under guardianship because of incompetency to manage the affairs of his estate does not constitute legal incapacity to make a will, but is no more than evidence of incompetency and may be overcome by parol proof that testator was mentally competent at the time the will was executed. See Hill v. Davis, 64 Okla. 253, 167 P. 465; also Mullholland's Est., 217 Pa. 65, 66 A. 150; Williams v. Robinson, 39 Vt. 267; Ames, Will, 40 Or. 495, 67 P. 737; Re Cowdry, 77 Vt. 359, 60 A. 141; Rice v. Rice, *Page 4 50 Mich. 448, 15 N.W. 545; Slinger's Will, 72 Wis. 22, 37 N.W. 236.
It is our conclusion, therefore, in view of the above authorities and observations herein made, that the judgment of the trial court cannot be sustained upon the grounds of an existing guardianship alone, and the evidence being sufficient to establish mental capacity at the time the will in question was made and likewise sufficient to meet all other essential requirements of the law, the judgment is reversed, with directions to admit the will in question to probate.
Reversed, with directions.
McNEILL, C.J., and JOHNSON, BRANSON, WARREN, MASON, and GORDON, JJ., concur.