## JONTE, Ex'x, v. ENGLISH.

No. 23485.   Feb. 26, 1935.

Rehearing Denied March 26, 1935.

Blanton, Curtis & Blanton, for plaintiff in error.

D. M. Cavaness and Samuel W. Hayes, for defendant in error.

RILEY, J.   E. L. English instituted this action against the First National Bank of Alex, Okla., and Willie Jonte, as executrix of the will of C. W. English, deceased. Plaintiff alleged that on March 21, 1930, he had deposited in said bank $3,070, subject to check by him or C. W. English; that the balance in said deposit was $2,400, but that payment of said sum to him had been refused. Plaintiff alleged that Willie Jonte, as executrix of the will of C. W. English, was claiming some interest in said deposit.

The prayer was that the defendant executrix be required to set forth her claim and that plaintiff have judgment against the bank for said $2,400, and interest, and against the executrix denying her right, title, or interest in or to said deposit.

The bank answered admitting a balance in said deposit of $2,422.06, pleading it did not know the rightful owner, and prayed for directions by the court as to payment. Willie Jonte, executrix, answered by alleging that C. W. English, on January 28, 1929, was committed to the State Hospital at Norman, being weak in body and mind; that he remained there until March, 1930, when the plaintiff secured leave and removed C. W. English to the home of plaintiff. Shortly thereafter plaintiff took C. W. English to Pauls Valley, and caused him to remove all his funds, in the sum of $3,075, from the First National Bank at Pauls Valley, and to deposit the same in the First National Bank at Alex, subject to plaintiff's checking account. That C. W. English was mentally incompetent to know, and did not comprehend the nature of his act, and that the act of plaintiff was fraudulent; that C. W. English is now deceased, having died May 4, 1930, and that defendant Willie Jonte is executrix of the last will and testament of C. W. English, deceased, and as such is entitled to recover from the First National Bank of Alex the sum so deposited.

There was a cross-petition by Willie

Jonte, alleging the existence of a promissory note of uncertain amount executed in 1925 or 1926, by E. L. English to C. W. English, for which the executrix prayed knowledge and judgment, but this phase of the case was denied by plaintiff and not developed by the evidence.

The plaintiff replied pleading that Willie Jonte, a daughter of C. W. English, deceased, had wrongfully caused C. W. English to be admitted to the State Hospital as alleged, and for ulterior purposes; that C. W. English was not insane or of weak mind at any time. That plaintiff, a brother of deceased, had secured a release from said state institution for said C. W. English, and had removed said C. W. English to the home of plaintiff at Alex, and had cared for him until his death. The plaintiff then pleaded that on or about March 26, 1930, C. W. English, being possessed of the personal property here involved, and being desirous of the comforts of life, entered into an oral contract with plaintiff and plaintiff's wife, "whereby it was agreed that if plaintiff and his wife would maintain a home for the said C. W. English, would see after his wants and necessities during his lifetime and would take care of the expense of the illness and burial, that the said C. W. English would pay and give to plaintiff his said money of approximately $3,000, with the understanding that said money was to be placed in the bank subject to the checks of said C. W. English, and used by him and the said plaintiff, and that if any of such fund should remain, after the death of said C. W. English and the payment of his doctor bills and other bills and funeral, that such balance should be the property of plaintiff to compensate plaintiff and his wife for the care and attention thus administered to the said C. W. English."

Plaintiff alleged that C. W. English was mentally competent to make said contract, that the same had been fully performed by plaintiff, that $647.94 of said deposit had been expended by him for support, medical attention, and burial expenses of the deceased, leaving a balance of $2,422.94, to which the executrix has no legal claim and for which plaintiff prayed judgment.

The cause was tried to the court. The court found that on March 26, 1930, E. L. English, plaintiff, deposited in the First National Bank of Alex, $3,070; that $2,-422.06 remained on deposit, that on said day C. W. English was 79 years of age and

lived with plaintiff, his brother, that the mental faculties of C. W. English "were to some extent impaired, * * * but that said C. W. English did have sufficient mentality to understand, realize, and fully comprehend the nature and consequences of his acts * * *"; that on March 26, 1930, C. W. English gave to and delivered to plaintiff, E. L. English, the said sum of $3,070, which at said time was owned by the said C. W. English, and at said time entered into the contract with plaintiff "that in consideration of the said C. W. English giving and delivering said sum of money to this plaintiff, that plaintiff was to provide a home for said C. W. English so long as he, the said C. W. English, might live." That E. L. English was to use the aforesaid sum of money, or any part thereof, and that upon the death of said C. W. English, plaintiff was to pay the expenses of the last illness and burial of C. W. English, and in consideration for such services plaintiff "was to own and have unconditionally the aforesaid sum of money." That on said date C. W. English delivered said sum of money to plaintiff, and plaintiff deposited the same in the First National Bank of Alex, where a portion thereof remains; that the said money was deposited to the credit of E. L. English and he, the plaintiff, instructed said bank to permit C. W. English, if he so desired, to check upon plaintiff's account; that the contract was valid, that it was performed on the part of plaintiff, and that he is entitled to judgment. That C. W. English was, on January 27, 1929, by the county judge of Garvin county, adjudged insane and committed to the state insane asylum at Norman. That said C. W. English was by the county judge of Garvin county and the superintendent of said insane asylum released from said institution on March 11, 1930. That C. W. English resided at the home of plaintiff from March 11, 1930, to May 3, 1930; that C. W. English died May 4, 1930.

Judgment was rendered accordingly, and the executrix appeals.

The parties treat this cause as a proceeding in equity. We shall so consider it.

At the outset it is contended by defendant in error that but one issue is raised by the pleading, i. e., the mental competency of C. W. English to perform the acts and deeds attributed to him. Stress is attached to excerpts from the opening statement of counsel for the executrix wherein the mental competency issue is isolated, but subse-

quent statements of counsel, equally as vociferous, denounce the plaintiff's allegations of a gift, and, after all, it is the pleadings that frame the issues. The reply of plaintiff clearly put in issue, not only the mental competency of C. W. English, but also an oral agreement between him, plaintiff and his wife whereby a balance, if any remained, in the deposit after the death of said English would constitute a gift "to compensate plaintiff and his wife for the care and attention thus administered to said C. W. English."

Did C. W. English have sufficient mental capacity "to enter into the contract or execute the gift in question?"

Dr. G. L. Johnson testified that C. W. English, when committed to the institution at Norman, was insane, that he suffered senile dementia. Dr. Wm. R. Barry, who attended C. W. English at Alex, Okla., testified that C. W. English, while suffering a general breakdown or senile condition, appeared to be sane and comprehended what he was doing. When questioned as to whether English was capable of carrying on any business transaction, the doctor answered that he would judge so, although he had not talked with him about any business transaction. On cross-examination the witness testified that he did not know whether English was capable of handling a transaction involving $3,000.

Dr. D. W. Griffin, medical superintendent of the Central Oklahoma State Hospital, Norman, Okla., testified by deposition that C. W. English, when admitted to the state institution, January 27, 1929, was suffering from senile dementia; that he would gradually grow worse; that his mental capacity was impaired; that on March 11, 1930, when English left the institution, his mental capacity was not such that he would "fully ascertain and comprehend the nature and effect of his acts."

On cross-examination the witness testified:

"He had some mentality; he was oriented for time and place * * * he paid very little attention to present events, on past events he was pretty clear."

The testimony of lay witnesses bearing upon the issue of mental capacity is varied considerably.

The rule seems to be that commitment to a state hospital for insane does not of itself establish the committed person's in-

capacity to transact business. In re Maas, 10 Okla. 302, 61 P. 1057; Norris v. Dagley, 64 Okla. 171, 166 P. 718; Knox v. Haug, 48 Minn. 58, 50 N. W. 934; Mutual Life Ins. Co. v. Wiswell, 56 Kan. 765, 44 P. 996; Wah-kon-tah-he-um-pah's Estate, 108 Okla. 1, 232 P. 46. But "capacity to transact business" is not the universal rule by which the validity of a gift is tested. Some authorities apply that standard, and embrace the rule that it is sufficient if the donor is mentally competent to execute a will, while the general rule is that if the donor has sufficient mental capacity to comprehend the transaction, if he understands the extent and value of his property, what persons are the object of his bounty, and the manner in which he is distributing his property among them, his gift will be valid. 28 C. J. 626.

Grave doubt exists as to the mental competency of C. W. English to enter into the contract and to execute the act constituting the gift inter vivos. Passing this question, in view of the finding of the trial court, we inquire whether the essential elements were present to constitute a gift inter vivos.

In Harmon et al. v. Kerns et al., 169 Okla. 290, 36 P. (2d) 898, this court followed the general rule that:

"To constitute a valid gift inter vivos, there must be a donor competent to make it; freedom of will on his part; an intention on his part to make it; a donee capable of taking the gift; the gift must be complete, and nothing left undone; the property must be delivered by the donor, and accepted by the donee; the gift must go into immediate and absolute effect; the gift must be gratuitous; the gift must be irrevocable."

Under the facts in the case at bar it appears that C. W. English converted his property into cash and went with his daughter to live. He deposited his money in the bank at Pauls Valley and joined his daughter in the title thereto. Thereafter he was committed to the state hospital at Norman in an impaired physical and mental condition. From this institution he was taken by his brother to live at Alex, Okla. Thereafter the deposit of money in the bank at Pauls Valley in the joint account was converted to a joint account with the brother at Alex.

There was some contract or understanding between C. W. English and his brother, the plaintiff, resting in parol, relating to

care, maintenance, and attention, for and in consideration of which a deposit of the worldly possession of C. W. English was made in the bank at Alex subject to the check of the two brothers, the substance of which would defray the cost of such care, maintenance, and attention administered to C. W, English. Moreover, it was the intention of C. W. English, in event of his death, that the balance should go to the suriviving brother and his wife just as his intention had previously been, in event of his death, that the same worldly possession would go to the daughter, who is now the executrix. That sum of money which did remain subsequent to the death of C. W. English was not the subject-matter of a gift inter vivos—there was no gift, for the reason that the gift was not complete, it was not absolute, it was not irrevocable. It was not the intention of C. W. English to make a present gift at the time of the last deposit, any more than it was his intention to make a present gift at the time his daughter was joined in title to his deposit at Pauls Valley. To the contrary, the intention of C. W. English, evidenced by his acts at Alex (conceding he was mentally capable of forming it), was to make a testmentary disposition of the fund to take effect after his death, but this intention was not executed in the manner provided by law. Turnbull v. Turnbull, 118 App. Div. 449, 103 N. Y. S. 499.

All right and dominion over the money deposited was not transferred from C. W. English. 12 R. C. L. sec. 24, p. 948.

Doubtless the past acts of C. W. English in reference to a deposit of the same money is the safest criterion of his intention regarding his last act. If he intended to control the money or exercise dominion over it during his lifetime under the last deposit as he did under the first, and we think he did, but that the balance of the sum so deposited would belong to his codepositor at his death, "there is no perfected gift, but the transaction is in the nature of a testamentary disposition and invalid." Note, 1 L. R. A. 535, 3 Ann. Cas. 865; 48 A. L. R. 189, note; Wolfe v. Hoefke et al. (Wash.) 214 P. 1047.

Judgment reversed and cause remanded, with directions to proceed in conformity with the views herein expressed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.