### LOFTIN v. YANCEY et al.

No. 27527.    Sept. 28, 1937.

Rehearing Denied March 1, 1938.

Application for Leave to File Second Petition for Rehearing Denied March 22, 1938.

R. E. Bowling, for plaintiff in error.

Champion, Champion & Fischl, for defendants in error.

BAYLESS, V. C. J. C. T. Loftin was guardian of the estate of John Stanley Yancey, an adult, incompetent ex-soldier. Yancey executed a will on the day of his death in which Loftin was named as chief beneficiary. The will was denied probate by the county court of Garvin county, and on appeal to the district court and trial de novo the will was again denied probate. This appeal followed.

The protest against the petition to admit the will to probate was based upon

314

several grounds. The trial judges both exonerated the proponent of undue influence, menace, or duress. They both found that the testator was lacking in testamentary capacity, and it was upon this ground alone that the probate of the will was denied. This is the only issue we will notice.

When the testator died he was about 48 years of age. He was drafted into the military service during the late war, and it was necessary to seize him and force him into the army. While serving in France he was shell shocked and gassed. Due to disabilities suffered in the line of military duty, he received compensation from the government until the time of his death. His condition grew progressively worse, by reason whereof his monthly allowance was increased more than once.

One of his brothers was appointed guardian for him many years ago. Later he resigned and Loftin was appointed. The testator lived first one place and another with his brothers and sisters or cousins. He seemed to have been very restless, and constantly on the move.

In the course of the last several years of his life, he was adjudged insane and was confined for a time at Norman, Okla. At least three or four times he was confined in a government hospital for mental and nervous diseases. The medical evidence shows he was suffering with hebephrenia at the time of his death and had been so afflicted for years. Maloy, Nervous and Mental Diseases (1935), defines this as follows:

"Dementia Praecox. This is a term used to include a wide range of mental disorders which occur in early life. * * * It is also called adolescent insanity and schizoprenia. * * * Dementia praecox includes three types, namely, primary dementia, catatonia, and hebeprenia. The word 'hebeprenia' means a form of mental disorder or insanity coming on at the time of puberty, and marked by depression, gradual failure of mental faculties and moral deterioration with egotistic and self-centered delusions."

The evidence discloses that testator suffered delusions, thinking that someone was after him, a tendency to run from visitors, arming himself against threatened aggressions, and constant stomach pains attributed by him to some animal or insect biting his "belly."

About the 17th day of September, 1935,

testator was admitted to a hospital at Pauls Valley, Okla., where he died September 26th from typhoid fever. About three or four hours before he died he executed the will in question. His nurse testified that from the beginning of his stay in the hospital he spoke of his desire to leave his property to Loftin. He referred to the matter at least five or six times. Finally she told Loftin, who in turn told his attorney, and the will was prepared. Loftin then took the will to one of the doctors attending the testator. This doctor told him it was his will and read it to him. He expressed satisfaction and it was executed, the doctor and nurse signing as witnesses. Testator was illiterate.

The issue before us is one of fact, touching upon the presence or absence of testamentary capacity.

Each side produced many witnesses, layman and expert. The trial judge found from this volume of evidence that the testator lacked testamentary capacity.

The function of this court is to review the record as though it was an equitable action. We will weigh the evidence, but we will not reverse the judgment of the trial court unless it appears clearly to be against the weight of the evidence. Porter v. Porter, 168 Okla. 645. 35 P. (2d) 938; In re Anderson's Estate, 142 Okla. 197, 286 P. 17, and other Oklahoma cases.

After reviewing this record we cannot say that the judgment is against the clear weight of the evidence. Two judges saw the witnesses and had an opportunity to consider their testimony. Each came to the same conclusion. We are unable to reach any other conclusion.

There are a number of factors which bring us to this conclusion. First. We doubt whether the proponents actually established testamentary capacity. The attending physician refused to qualify as an expert on mental cases. His testimony was weak. The nurse testified that he was of sound mind. Second. The proponent's case was overwhelmed both in quality of evidence and number of witnesses. Third. His previous actions. These are not necessarily controlling, but may be resorted to for enlightenment. Incompetency to handle affairs by reason whereof a guardian is appointed does not preclude testamentary capacity. Excdine v. Red Corn, 108 Okla.

1, 232 P. 46. There is generally a presumption of capacity. In re Nitey's Estate, 175 Okla. 389, 53 P. (2d) 215. But where insanity has been shown to exist, and is described as of a chronic 'and progressive nature, a presumption of continuance arises. Alexander's Comm. on Wills, vol. 1, p. 487, sec. 357. Fourth. In the final analysis, the presence or absence of testamentary capacity must be determined as of the time the will is executed. In re Wah-kon-ta-he-um-pah's Estate, 108 Okla. 1, 232 P. 46, and other cases cited under "Wills." 21-55, vol. 14 Oklahoma Digest by West Publishing Co. Every physician who examined testator said his nervous disorder was of a type that precluded testamentary capacity. The attending physician said the testator was in 'a stupor a part of the day of his death. The will was executed three or four hours before death. The trial judge placed great stress upon the nearness to death.

RILEY, PHELPS, GIBSON. and HURST, JJ.. concur. WELCH, CORN, and DAVISON, JJ., dissent. OSBORN, C. J., not participating.